**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **MICHELLE L. NUNNALLY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case no. 4:18cv00680 PLC** |
| ) | |
| **STILLWATER INSURANCE COMPANY,** ) | |
| ) | |
| **Defendant.** ) | |

<u>**MEMORANDUM AND ORDER**</u>

This matter is before the Court on Plaintiff Michelle Nunnally's motion to compel [ECF No. 23]. Plaintiff moves for an order compelling Defendant to: (1) respond more fully to interrogatories 8, 12 and 13 of Plaintiff's first set of interrogatories, (2) respond more fully to requests for production 2, 9, 10, 11, 12, 13, 16 and 17 in Plaintiff's first request for production of documents, and (3) produce requested documents not yet disclosed. Defendant opposes the motion [ECF No. 30] on the grounds it provided Plaintiff "all non-privileged documents responsive" to Plaintiff's discovery requests, it "produced all communications between Defendant and Plaintiff and her attorney," and other materials sought by Plaintiff are protected from discovery by either the attorney/client privilege or the work product doctrine. Plaintiff did not file a reply. <u>See</u> Local Rule 7-4.01(C).

The Court heard oral argument on the motion. During argument the parties clarified that no disputes remained with respect to: (1) interrogatory 12 and request for production 12, (2) requests for production 16 and 17, and (3) Defendant's assertion of the attorney/client privilege. Accordingly, without further discussion, the Court denies without prejudice as moot Plaintiff's motion to compel to the extent it focuses on Defendant's responses to Plaintiff's interrogatory 12

and requests for production 12, 16, and 17, as well as Defendant's assertion of the attorney/client privilege in response to any of Plaintiff's discovery requests that are the subject of Plaintiff's motion to compel. The Court, therefore, addresses Plaintiff's motion to compel only with respect to Defendant's assertion that the work product doctrine protects from disclosure material responsive to interrogatories 8 and 13 and requests for production 2, 9, 10, 11, and 13.

## I.      Factual and Procedural Background

On October 5, 2012, an underinsured driver, Christina Allen, struck Plaintiff's vehicle on a highway in St. Louis County, Missouri, allegedly causing Plaintiff severe pain and permanent injuries to her neck, shoulders, arms, and hands. Pl.'s compl. ¶¶ 5, 6, 8, and 14 [ECF No. 8]. In November 2016, Ms. Allen's insurer paid its $25,000.00 policy limit to Plaintiff in exchange for Plaintiff's limited release, which reserved Plaintiff's claims against Defendant, her insurer, for underinsured motorist benefits. Id. ¶¶ 10-12.

On April 3, 2018, Plaintiff filed a petition against Defendant in the Circuit Court of St. Louis City, seeking monetary relief for Defendant's alleged breach of contract (Count I) and vexatious refusal to pay (Count II) under the underinsured motorist bodily injury ("UIM") coverage of a policy issued by Defendant. Defendant removed the case to this Court based on diversity jurisdiction. Def.'s notice of removal [ECF No. 1].

After removal, Plaintiff served Defendant with interrogatories and requests for production, to which Defendant filed objections and answers. See ECF Nos. 23-3 and 23-4. The interrogatories and requests for production remaining under consideration are:

Interrogatory 8: Have you obtained any statements from any person who has or claims to have knowledge of any relevant facts concerning any of the issues involved in the captioned suit, and if so, [state:] whether such statements w[ere] oral, written or recorded; identify the person who gave the statement, the date and place the statement was made[,] and the name and address of each person present when the statement was made[;] and [identify] each

person who has present custody of each written statement, recording of an oral statement, or a transcript of a reported or recorded statement.

Interrogatory 13: State whether or not written or recorded statements have been obtained from any persons mentioned in the answers to . . . Interrogatory above with regard to the facts or circumstances surrounding the occurrence mentioned in the[] pleadings, and if so, the names, address[es] and employers of persons whose statements were obtained; [and] the name, address, employer and job title of the person presently having control or custody of each statement.

Request for Production 2: Statements of any individuals regarding the collision or Plaintiff's injuries.

Request for Production 9: Reports, written statements, transcripts or summaries of oral statements, regarding Plaintiff's claim, from any individual(s), other than Defendant's attorneys, who reviewed Plaintiffs' claims submitted to . . . Defendant.

Request for Production 10: Correspondence to or from Plaintiff or anyone else regarding this claim or the insurance policy identified in Plaintiff's Petition except for that which is protected by the attorney/client privilege.

Request for Production 11: All documents in your possession regarding this claim, including (but not limited to) your claim file, activity log, notes, memoranda, reports or other documents or things relative to the injury claim of Plaintiff created on or before the date the instant lawsuit was filed.

Request for Production 13: Any and all memorand[a], correspondence and training documents pertaining to the calculation of underinsured motorist claims by claims personnel for this Defendant and . . . applicable to the handling of Plaintiff's claim.

While Defendant answered several of the interrogatories and requests for production remaining under consideration, Defendant also objected as follows to each of those discovery requests:

ANSWER: Defendant objects to this [discovery request] as seeking information protected by the . . . work product privilege[]. State ex rel. Safeco [N]at. Ins. Co. of Am[.] v. Rauch, 849 S.W.2d 632 (Mo. App. 1993); State ex rel. Shelter Mut. Ins. Co. v. Wagner, No. WD 81541, 2018 WL 3121727 (Mo. Ct. App. June 26, 2018) [and readopted on Feb. 5, 2019]; Logan v. Commercial Union Ins. Co., 96 F.3d 971 (7th Cir. 1996); Scott[]rade, Inc. v. The St. Paul Mercury Ins. Co., [No. 4:09CV1855SNLJ,] 2011 WL 572455 (E.D. Mo. [Feb. 15,] 2011); Medical Protective Co[.] v. Bubenik, [No. 4:06CV01639ERW,] 2008

WL 2132100 (E.D. Mo. 2008) (unreported); <u>State ex rel. Spear v. Davis</u>, 596 S.W.2d 499 (Mo. App. 1980); <u>Lachonda Smith v. Geico</u>, [No.] 1622-CC10778, Trial Court Mem[.] and Order of Apr[.] 7, 2017, St. Louis City Circuit Court, 22nd Circuit (2017); <u>Aradom v. Geico [Cas. Co.]</u>, [No.] 4:17CV02365[RWS], United States District Court Eastern District of Missouri, Order dated 12/05/2017, Doc. #23 (2017); <u>Stewart v. Smith,</u> [No.] 17CG-CC00126, Trial Court Order of Dec[.] 1, 2017, Cape Girardeau Circuit Court, 32nd Circuit (2017). See attached privilege log.

[ECF Nos. 23-3 and 23-4].

For its privilege log [ECF No. 23-6], Defendant stated the protection of the work product doctrine encompasses responsive materials from "10/08/12 – current" and "Defendant withholds under a claim of privilege its internal investigation file, internal correspondence and internal claim log/notes from the date Plaintiff's claim was reported."  Defendant did not otherwise describe the materials it seeks to protect from disclosure and, in support of the application of the work product doctrine, cited the same cases it had cited in its quoted objection to Plaintiff's discovery requests.

After receiving Defendant's objections and engaging with Defendant in efforts to resolve the discovery disputes, Plaintiff filed her motion to compel arguing[1] the work product doctrine does not protect materials Defendant prepared before Plaintiff filed this lawsuit against Defendant on April 3, 2018.[2]  Plaintiff also challenges Defendant's privilege log as not providing an adequate description of the nature of the documents, communications or tangible things Defendant withheld to enable Plaintiff to assess the work product claim, as required by Federal Rule of Civil Procedure 26(b)(5)(A)(ii).  Plaintiff further asserts that, to the extent any requested material is protected by the work product doctrine, Plaintiff (1) has a substantial need for the

---

[1]  Plaintiff also asserts in her motion that her challenged discovery requests seek information and documents that are relevant, material, and within the scope of Federal Rule of Civil Procedure 26.  In its opposition to Plaintiff's motion to compel, Defendant does not contest the materials Plaintiff requests on the grounds they are not relevant, not material, or beyond the scope of Rule 26.

[2]  Plaintiff does not seek information or materials Defendant prepared after Plaintiff filed this lawsuit.

material to litigate her vexatious refusal claim, and (2) is unable to obtain the substantial equivalent of the requested material by any other means.

In response to Plaintiff's contentions, Defendant urges that the work-product doctrine applies to material generated after October 12, 2016, the date Plaintiff's attorney sent a letter to Defendant advising Defendant of Plaintiff's UIM claim. With respect to Plaintiff's challenge to Defendant's privilege log, Defendant states it "cannot, without revealing its opinion work product, defense strategy, attorney/client communications, etc., provide a more detailed privilege log," and offers to submit a more detailed privilege log for in camera review by the Court. Finally, Defendant contends that Plaintiff cannot establish a "substantial need" for disclosure of the withheld material, because Defendant has only withheld "Defendant's opinion and mental impression work product generated in response to Plaintiff's claim" [ECF No. 30 at 12].

In support of its position that work product protection attaches as of October 12, 2016, Defendant provided the following chronology:[3]

| | |
|---|---|
| October 5, 2012: | Date of accident. |
| October 8, 2012: | Plaintiff advises Defendant by telephone of the accident. |
| October 10, 2012: | Plaintiff advises Defendant by telephone she is not making a claim under her policy. . . . |
| October 12, 2016: | Plaintiff's attorney sends Defendant a letter of representation notifying Defendant of his representation of Plaintiff and asserting a UIM claim against Defendant. . . . |
| October 11, 2017: | Defendant hires outside counsel for Plaintiff's claim. |
| April 3, 2018: | Plaintiff files suit. |

Plaintiff did not file a reply or other document contesting this chronology. During argument, Plaintiff challenged only the October 11, 2017 date Defendant reports as the date when "Defendant hire[d] outside counsel for Plaintiff's claim." In particular, without providing details, Plaintiff's counsel stated that he was aware of a different time when Defendant was

---

[3] Some of the information provided in the chronology is not otherwise in the record.

represented by outside counsel. Under the circumstances, the Court considers October 11, 2017 as the date when Defendant hired outside counsel to address Plaintiff's UIM claim.

Shortly before Defendant hired outside counsel on October 11, 2017, Plaintiff presented Defendant a demand in an effort to resolve the claim before filing the lawsuit. Specifically, Plaintiff made "her demand o[n] October 6, 2017." Pl.'s counsel's "Good Faith Letter Pursuant to Local Rule 37-3.04" [ECF No. 23-5]. The record does not disclose when Defendant made any offer in response to Plaintiff's demand.

To resolve the parties' disputes, the Court considers the above chronology and information regarding the parties' pre-litigation settlement effort, as well as the undisputed fact that Defendant has not denied Plaintiff's UIM claim. Rather than denying Plaintiff's UIM claim, Defendant disputes the value of Plaintiff's damages and the amount of UIM coverage available under the policy Defendant issued to Plaintiff.

## II.    Legal Standard

"A district court is afforded wide discretion in its handling of discovery matters." Cook v. Kartridg Pak Co., 840 F.2d 602, 604 (8th Cir. 1988). See also HIP, Inc. v. Hormel Foods Corp., 888 F.3d 334, 342 (8th Cir. 2018) (the Eighth Circuit reverses "a district court's discovery rulings only for a gross abuse of discretion resulting in fundamental unfairness in the trial of a case") (internal quotation marks and citation omitted). In cases pending before a federal court based on the court's diversity jurisdiction, federal law applies to resolve claims that the work product doctrine protects otherwise discoverable material from disclosure. Baker v. General Motors Corp., 209 F.3d 1051, 1053 (8th Cir. 2000).

The work product doctrine protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative

(including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. Pro. 26(b)(3)(A). A litigant may, however, obtain discoverable documents and tangible things otherwise protected by the work product doctrine if the litigant requesting the materials "shows that it has substantial need for the materials to prepare its case and cannot, without substantial undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

If a court concludes a litigant may obtain material otherwise protected by the work product doctrine, the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B). The Eighth Circuit summarized the distinction between the protection from disclosure of "ordinary work product" and "opinion work product" as follows:

> There are two kinds of work product — ordinary work product and opinion work product. Ordinary work product includes raw factual information. See Gundacker v. Unisys Corp., 151 F.3d 842, 848 n. 4 (8th Cir. 1998). Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories. See id. at n. 5. Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means. See Fed. R. Civ. P. 26(b)(3). In contrast, opinion work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud. See In re Murphy, 560 F.2d 326, 336 [n. 19] (8th Cir. 1977).

Baker, 209 F.3d at 1054.

While there is a distinction in the protection from disclosure afforded ordinary versus opinion work product, the parties have not argued there is a different burden on the litigant seeking the work product doctrine's protection based on that distinction. Rather, the litigant asserting the work product doctrine bears the burden of establishing the doctrine protects

material from discovery.  In re Grand Jury Proceedings (Malone), 655 F.2d 882, 887 (8th Cir. 1981).  Importantly, when a litigant withholds otherwise discoverable material based on the work product doctrine, "the party must:  (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A).  More specifically, the litigant "'asserting the work product privilege must set forth objective facts to support its claim of privilege; a mere conclusory statement that the work product was created in anticipation of litigation is not enough.'  AAB Joint Venture v. United States, 75 Fed. Cl. 432, 445 (2007)."  United States ex rel. Cairns v. D.S. Medical, L.L.C., No. 1:12CV00004 AGF, 2017 WL 3887850, at *3 (E.D. Mo. Aug. 31, 2017).

The information supporting a claim that the work product doctrine protects material from disclosure is generally provided in a "privilege log."  See, e.g., Matter of Am. River Transp. Co., No. 4:11-CV-523(CEJ), 2017 WL 747608, at *2 (E.D. Mo. Feb. 27, 2017); Scottrade, Inc., 2011 WL 572455, at *3.  The privilege log must provide "sufficient detail to evaluate" the claim that the work product doctrine protects withheld material from disclosure.  Matter of Am. River Transp. Co., 2017 WL 747608, at *2.  In Rabushka ex rel. United States v. Crane Co., 122 F.3d 559, 565 (8th Cir. 1997), the Eighth Circuit concluded a litigant asserting the work-product doctrine "met its burden of providing a factual basis for asserting the privilege[] when it produced a detailed privilege log stating the basis of the claimed privilege for each document in question, together with an accompanying explanatory affidavit of its . . . counsel").  Under applicable authority, the privilege log should provide sufficient factual information with respect

to each item withheld for another litigant to assess the work product doctrine claim with respect to each item.

### III. Discussion

#### A. Effective date for work product doctrine protection

Plaintiff argues the work product protection does not apply until Plaintiff filed her lawsuit against Defendant on April 3, 2018. Defendant counters that the work product doctrine is triggered on October 12, 2016, the date on which Plaintiff's attorney notified Defendant of Plaintiff's UIM claim.

As noted earlier, the work product doctrine, as set forth in Rule 26(b)(3)(A), protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." In deciding when the work product doctrine applies, the Eighth Circuit admonishes that "the work product rule does not . . . come into play merely because there is a remote prospect of future litigation." Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 604 (8th Cir. 1977), rehearing with respect to attorney/client privilege protection only, 572 F.2d 606 (8th Cir. 1978) (en banc). Rather, whether material was generated in "anticipation of litigation," as set forth in in Rule 26(b)(3), is a factual determination:

> [T]he test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of litigation.

Simon v. G.D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1987) (internal quotation marks and citation omitted) (alteration in original); accord PepsiCo, Inc. v. Baird, Kurtz & Dobson LLP, 305 F.3d 813, 817 (8th Cir. 2002) ("the party seeking [work product doctrine] protection must

show the materials were prepared in anticipation of litigation, e.g., because of the prospect of litigation").

The documents Defendant seeks to protect as work product are those responsive to Plaintiff's discovery requests for: (1) others' statements about the facts and Plaintiff's loss (interrogatories 8 and 13 and request for production 2); (2) correspondence with anyone regarding the claim or policy (request for production 10); and (3) claim-related material Defendant possesses, such as its claim file material, including material of those who reviewed Plaintiff's claim (requests for production 9, 11 and 13). Due to the absence of a detailed privilege log, more specific information about the withheld material Defendant generated in response to Plaintiff's UIM claim is not available. Based on the available record, the nature of the material Defendants seeks to protect by the work product doctrine is: statements of the facts and loss related to Plaintiff's UIM claim, correspondence sent or received by Defendant regarding Plaintiff's UIM claim, and material Defendant prepared during its consideration and review of Plaintiff's UIM claim.

In the insurance context, the Eastern District of Missouri has recognized that "much of the paperwork generated by insurance companies 'is prepared with an eye toward a possible legal dispute over a claim[.]'" Electric Power Sys. Int'l, Inc. v. Zurich Am. Ins. Co., No. 4:15CV1171CDP, 2016 WL 3997069, at *3 (E.D. Mo. July 26, 2016) ("Electric Power") (quoting Logan, 96 F.3d at 977). "Because of this, 'it is important to distinguish between an investigative report developed in the ordinary course of business as a precaution for the remote prospect of litigation and materials prepared because some articulable claim, likely to lead to litigation, . . . ha[s] arisen." Id. (emphasis and alterations in original) (quoting Logan, 96 F.3d at 977) (internal quotation marks and citation omitted)).

More specifically, for the work product doctrine to apply to material generated by an insurer in response to a claim under a policy it issued, "the documents must have been prepared after a 'specific threat' of litigation became 'palpable.' That litigation was 'merely a possibility' is insufficient." American Modern Home Ins. Co. v. Thomas, No. 4:16CV215 CDP, 2017 WL 3978369, at *4 (E.D. Mo. Sept. 11, 2017) (quoting Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co., No. 4:05-CV-1934 DDN, 2012 WL 1389708, at *4 (E.D. Mo. April 23, 2012)). "[A]n insurer's decision to decline coverage is usually the point at which the ordinary course of business ends and the anticipation of litigation begins" for purposes of the work product doctrine. Id.; accord Folk v. State Farm Mut. Auto. Ins. Co., No. 4:10-CV-574 HEA, 2010 WL 3620477, at *2 (E.D. Mo. Sept. 9, 2010) (using the date the insurer denied the UIM claim as the starting date for protection of the work product doctrine).

Although the insurer's denial of a claim signifies the "anticipation of litigation" in the context of the work product doctrine, here Defendant has not denied Plaintiff's UIM claim. Therefore, the issue is: in the absence of Defendant's denial of Plaintiff's UIM claim, when did the ordinary course of Defendant's business end and the anticipation of litigation begin, or, put another way, when did a "specific threat" of litigation become "palpable," rather than merely possible?

In American Modern Home Ins. Co., supra, the court characterized the start of the work product doctrine's protection, in a case in which the insurer had not denied the insured's claim, as the date when it becomes clear "what course of action [the insurer] would take on the [insureds'] claim." American Modern Home Ins. Co., 2017 WL 3978369, at *4. Specifically, the court concluded "the question [whether the 'litigation [became] palpable'] remained open" until the insurer's course of action on the claim was clear and the insurer's documents prepared

prior to that date "were not prepared because of the likelihood of litigation and [we]re not work product." Id. While the court in American Modern Home Ins. Co. specified the date when the protection of the work product doctrine began, November 12, 2015, the decision does not explain what happened on that date to disclose what course of action the insurer was taking on the insureds' claim. See id.

A demonstration of an insurer's course of action on an insured's claim may be established by the insurer's hiring of outside counsel. Medical Protective Co. v. Bubenik, No. 4:06CV01639 ERW, 2007 WL 3026939, at *4 (E.D. Mo. Oct. 15, 2007). In Bubenik, the court acknowledged the date when an insurer hires outside counsel is not necessarily dispositive of when litigation is anticipated for purposes of the work product doctrine. Id. Under the circumstances of that case, however, the court found the date when the insurer hired outside counsel, or May 23, 2006, was dispositive because "it indicate[d] [the insurer]'s intention to challenge coverage" of the insured's claim "and the beginning of an adversary relationship between the parties." Id. Therefore, the court concluded, "[a]ny documents created by [the insurer] after [the insurer] had hired outside counsel to challenge the coverage of the [insureds] [we]re protected by the work-product doctrine." Id.

As in Bubenik, this Court concludes the date on which Defendant hired outside counsel, or October 11, 2017, demonstrates Defendant's intention to challenge coverage of Plaintiff's UIM claim under the circumstances. In particular, Defendant hired outside counsel within less than a week after Plaintiff made her demand on October 6, 2017. See Pl.'s counsel's "Good Faith Letter Pursuant to Local Rule 37-3.04" [ECF No. 23-5]. Defendant's hiring of counsel relatively promptly after Plaintiff's pre-litigation settlement demand reveals "what course of action [the insurer] would take on the [insured's] claim" - Defendant would not accept the

coverage of Plaintiff's UIM claim sought by Plaintiff. At that point, a "serious threat" of litigation was "palpable" and litigation was anticipated; therefore, the protection of the work product doctrine commenced.

Contrary to the Court's conclusion, Plaintiff argues the triggering date for the protection of the work product doctrine should be the date she filed this lawsuit, or April 3, 2018. In support, Plaintiff relies on two cases addressing UIM claims: McConnell v. Farmers Ins. Co., No. 07-4180-CV-C-NKL, 2008 WL 510392 (W.D. Mo. Feb. 25, 2008); Folk, supra. In each of those cases, the court found materials were not created in "anticipation of litigation" and, therefore, were not protected by the work product doctrine to the extent the materials were created before the insurer's denial of the insured's claim. McConnell, 2008 WL 510392, at *2, 3; Folk, 2010 WL 3620477, at *2. Because both decisions hold that the work product doctrine's protection commences upon denial of the insured's claim, they are not helpful in resolving situations where, as here, an insurer does not deny an insured's claim.[4]

In contrast to Plaintiff's position, Defendant contends the work product protection started on the date Plaintiff's counsel presented Plaintiff's UIM claim to Defendant, October 12, 2016. Defendant asserts that is the date the work product protection attached because that is when the parties became "adversarial." To support its position, Defendant relies on the cases it cited in its

---

[4] Plaintiff appears to contend that the Western District in McConnell decided that the lawsuit filing date was the date the insurer denied the insured's claim. See Pl.'s br. supp. Pl.'s mot. compel at 5 [ECF No. 24] ("The court in the McConnell case, . . . addressing a very similar discovery dispute in an underinsured motorist case like the one at bar, opined that the information sought was discoverable up until the point the claim was denied, hence suit was filed against the insurance company"). While the discovery requests at issue in the McConnell case sought material in the insurer's file at the time the insurer was served with process for the lawsuit, the lawsuit was filed, or the insurer had "actual knowledge that suit would be filed," the Western District explicitly allowed disclosure only of material prepared before the insurer "formally denied" the insured's claim. McConnell, 2008 WL 510382, at *1 and *3. The Western District did not identify the date the insurer "formally denied" the insured's claim, and did not explicitly discuss whether or how the insurer's "formal" denial of the insured's claim occurred when the insured filed his lawsuit. Without more, this Court is unwilling to conclude the McConnell decision stands for the proposition that an insurer's "formal denial" of an insured's claim may occur when the insured files a lawsuit.

objection to Plaintiff's discovery request. In particular, Defendant relies on[5] the Missouri Court

of Appeals' decision in Rauch, supra; the decision of the City of St. Louis Circuit Court focusing

on uninsured motorist and UIM claims in Smith,[6] supra; and the decision of the Eastern District

of Missouri on a UIM claim in Aradom, supra.[7]

In Rauch, after the phantom vehicle involved in the insureds' August 1991 motor vehicle

accident was identified and found to have insurance coverage, the insureds' insurer advised the

insureds, on January 20, 1992, that the insurer would not consider payment "under the uninsured

or underinsured motorist provision" of the policy. Rauch, 849 S.W.2d at 633. After the insureds

filed the lawsuit against their insurer seeking uninsured motorist coverage, the insureds served

the insurer with a deposition subpoena seeking the insurer's "complete investigative file,

including all documents, reports and items in writing accumulated by" the insurer. Id. The

insurer moved to quash the subpoena. Id. The trial judge denied the motion allowing the

insureds "access to the contents of [the insurer]'s claim investigation file up to January 20, 1992,

the date on which [the insurer] informed [the insureds] that their claim under the policy would

not be considered." Id. The insurer filed a petition for writ of prohibition in the Missouri Court

---

[5] Defendant also relies on the decision of the Western District in Wagner, supra. In Wagner, the Western District mentioned work product doctrine principles but found the insured's argument that material was not protected as work product "inapplicable" because the court had concluded the material was protected by the attorney/client privilege. Wagner, 2018 WL 3121727, at *6. Therefore, Wagner does not support Defendant's position that the work product doctrine applies from the date an insured presents its claim to the insurer.

[6] The decision Defendant cites to as Smith is a decision entered in three cases, the first of which is Anderson v. Safeco Ins. Co. [ECF No. 30-2]. To avoid confusion, the Court cites to that decision as the Smith case.

[7] Defendant also argues a 2008 decision in the Bubenik case, 2008 WL 2132100, supports Defendant's position that the claim file is protected by the work product doctrine from the date the insured submits its claim to the insurer. In the 2008 Bubenik decision, however, the Eastern District of Missouri declined to change its 2007 decision "that documents created[] after the [insurer] hired outside counsel, which relate to the question of coverage, were protected by the work-product doctrine." Id. at *3 ("When [the insurer] retained outside counsel, on May 23, 2006, to advise it regarding it obligation to provide continued coverage, it was acting in anticipation of litigation"). More specifically, the court stated it was not inclined to "alter the date on which it concluded the [insurer] anticipated litigation," as the insureds requested. Id. Rather than support the Defendant's decision, the 2008 decision in Bubenik supports this Court's decision that the work product protection began once Defendant hired outside counsel.

- 14 -

of Appeals "to prevent [the trial judge] from allowing [the insureds] access to the claim investigation file." Id. The Missouri Court of Appeals first issued a preliminary writ "prohibiting all action," and then issued a decision making the preliminary writ "permanent to prohibit enforcement of the subpoena," while dissolving the writ "in all other respects so that the matter may proceed toward disposition in accordance with" the opinion. Id. at 633, 636.

By making the writ permanent "to prohibit enforcement of the subpoena," the Missouri Court of Appeals denied the insureds access to material in the insurer's claim file both before and after the insurer denied the insureds' claim. In reaching its decision that the work product doctrine protected the insurer's file, the Missouri Court of Appeals concluded the "claim under the uninsured motorist provision of the policy creates an adversarial environment" with the insurer. Id. at 635. More specifically, the Missouri Court of Appeals explained:

> Generally, insurer and insured are in an adversary relationship whenever there is any claim by an insured for loss under any insurance policy. . . . [With respect to an uninsured motorist claim t]he provision creates no special relationship between the insured and the insurer but only the mere contract to pay damages up to the policy limits upon determination that the uninsured motorist is legally liable for the injury to the insured. No independent duty of good faith and trust accrues to the insured under this coverage. . . . The very contrary results: under the uninsured motorist provision the insured and the insurer become adversaries who deal with wariness, not principal and agent who deal with trust.

> \* \* \* \*

> . . . [B]ased on the adversarial relationship of the parties, as well as the nature of an uninsured motorist claim based on a collision with a phantom vehicle, it is likely that [the insurer] would have investigated the collision and [the insureds'] claim under the policy with an eye toward discovering the identity of the phantom vehicle and contesting, if necessary, [the insureds'] claim.

Id. at 635 (citations omitted). Due to the "adversarial" nature of the parties' relationship, the Missouri Court of Appeals concluded the insureds would be able to discover the work product material only if they made "the requisite showing of substantial need and an inability without

undue hardship to obtain the substantial equivalent of the materials by other means." Id.; see also id. at 636 ("specific materials sought [by the subpoena] and deemed work product would require a showing of substantial need and undue hardship").

In Smith, another case on which Defendant relies, the St. Louis City Circuit Court followed Rauch to resolve "at what point do the insured and insurer become adversaries, such that materials prepared by the insurer in response to the [insured's] claim are prepared 'in anticipation of litigation'?" Smith, at 7 [ECF No. 30-2]. In Smith the court resolved the work product doctrine's application in three cases involving uninsured motorist and UIM claims. Id. at 10. The court in Smith chose to follow the Missouri Court of Appeals' decision in Rauch, after distinguishing the later Missouri Supreme Court in Grewell v. State Farm Mut. Auto. Ins. Co., 102 S.W.3d 33 (Mo. 2003) (en banc).

In Grewell, the Missouri Supreme Court held the insurer's claims file "is analogous to the file of a client held by an attorney" to which the insureds "should be provided free and open access." Id. at 37. The St. Louis City Circuit Court in the Smith case, which focused on uninsured motorist and UIM claims by insureds, concluded the Grewell decision did not apply because it addressed a liability insurance claim against the insureds and did "not mention, much less overrule, Rauch."[8] Smith at 7-8, 10 [ECF No. 30-2]. In particular, the Smith court stated the Grewell decision "did not establish a bedrock principle that insurers' claims files belong to the insureds. The holding relates to the *liability insurance claims file,* and rightly so, since the insurer is undertaking a duty to defend its insured under liability coverage. UM and UIM coverage is a different animal." Id. at 8 (emphasis in original). The Smith court concluded, in

---

[8] The Smith court also characterized the rationale of the Western District in McConnell, supra, as "appealing," but concluded, it could not "disregard the clear limitation of Grewell and the clear holding of Rauch." Smith, at 10 [ECF No. 30-2]. In the McConnell case, involving a UIM claim, the Western District decided Grewell, rather than Rauch, applied to the extent state law resolved a work product doctrine issue in federal court. McConnell, 2008 WL 510392, at *2. As noted earlier, however, the McConnell court decided that the insureds were entitled to the insurer's material only up to the date the insurer "formally denied" the insured's claim. Id. at 3.

accordance with <u>Rauch</u>, that "the claim files of the . . . insurers in these [uninsured motorist and UIM] cases are clothed with the work product privilege." <u>Id.</u> at 11.

While the state court decisions in <u>Smith</u>, <u>Rauch</u>, and <u>Grewell</u> are instructive, the Court concludes they are not dispositive of the work product doctrine issues here. As noted earlier, federal law applies to resolve the work product issues in this case. In the Eastern District of Missouri, the existence of any "adversarial" relationship between the insured and its insurer is not in and of itself enough to trigger work product protection. Rather, the work product doctrine applies to insurer's materials that are prepared after a "specific threat" of litigation is "palpable," rather than merely possible. <u>See</u>, <u>e.g.</u>, <u>American Modern Home Ins. Co.</u>, 2017 WL 3978369, at *4. When the insured submits its UIM claim to an insurer, it is as likely the insurer and insured will resolve the claim without litigation as it is that the insurer and insured will not resolve the claim until a lawsuit is filed. Therefore, upon the insured's submission of its claim to the insurer, litigation of the insured's UIM claim is, at most, possible, not "palpable," and the work product protection does not apply. Therefore, relying solely on a characterization of the insurer/insured relationship as adversarial is not enough to trigger protection of the work product doctrine in a federal court's diversity case. <u>See</u>, <u>e.g.</u>, <u>Bubenik</u>, 2007 WL 3026939, at *2 n. 2 (noting the <u>Grewell</u> decision did "not address whether or not certain documents fall within the claim file, nor d[id] it address when specific documents are subject to . . . work product protection").

Finally, Defendant points to the decision of the Eastern District of Missouri in <u>Aradom</u>, <u>supra</u>, as supporting Defendant's position that the date Plaintiff submitted her UIM claim to Defendant is the date when work product protection began. In <u>Aradom</u>, the insurer made the same argument as Defendant in this case to obtain work product protection from the date the insured submitted his UIM claim. <u>See</u>, <u>e.g.</u>, Def.'s response to Pl.'s mot overrule Def.'s

objections to Pl.'s discovery in Aradom at 1-3 and 5[ECF No. 30-4]. The one-and-a-half page decision of the court in <u>Aradom</u> includes no explanation of the court's consideration of the insurer's argument. <u>Aradom</u>, No. 4:17CV02365 RWS, Order [ECF No. 30-1]. Instead, the court states that it held a hearing, "the only outstanding documents are [the insurer's] claim notes," and:

> Based upon [the court's] review of the materials submitted by [the insurer] and the parties' arguments, [the court] conclude[s] that the work product privilege applies [to the insurer's claim notes]. Moreover, the materials sought are not relevant to the factual allegations presented by the parties, namely the extent of Aradom's injuries and the value of potential damages. As a result, [the court] will deny Aradom's motion.

<u>Id.</u> Without more, the Court is not convinced that the decision in <u>Aradom</u> reflects a persuasive acceptance of the insurer's argument that the work product protection applies from the date the insured presents its insurer with a UIM claim.

The Court having concluded that the work product doctrine is inapplicable to documents prepared by Defendant prior to the date Defendant hired outside counsel, the Court grants Plaintiff's motion to compel. The Court establishes a deadline for Defendant to provide materials, not protected by the attorney/client privilege, that Defendant prepared or obtained until October 11, 2017, the date Defendant hired outside counsel.

B. <u>Adequacy of the privilege log</u>

In her motion to compel, Plaintiff argues Defendant's privilege log was not sufficient to allow her to assess Defendant's claim that withheld material was protected by the work product doctrine. Defendant's privilege log, as noted earlier, summarily states Defendant is withholding "its internal investigation file, internal correspondence and internal claim log/notes from the date Plaintiff's claim was reported." Defendant provides no specific factual detail about any of the material it withheld pursuant to the work product doctrine. Additionally, in response to

Plaintiff's motion to compel, Defendant offered to submit for the Court's in camera review a more detailed privilege log, as well as the materials it is withholding that respond to Plaintiff's disputed discovery requests.

When a litigant withholds material based on the work product doctrine, Rule 26(b)(5)(A)(ii) expressly requires the litigant to describe the nature of the withheld material (1) in a manner enabling other parties to assess the claim and (2) without revealing privileged or protected information. The description of the withheld material must be more than conclusory. See, e.g., Rabushka ex rel. United States, 122 F.3d at 565 (a litigant claiming protection of the work product doctrine met its burden when it produced a detailed privilege log stating the basis of the claimed privilege for each document withheld); D.S. Medical, L.L.C., 2017 WL 3887850, at *3 (a conclusory statement that withheld material was created in anticipation of litigation is not enough). The Western District of Missouri has specified that a privilege log:

> contain a brief description or summary of the contents of the document, the date the document was prepared, the person or persons who prepared the document, the person to whom the document was directed and for whom the document was prepared, the purpose in preparing the document, what privileges are asserted for each document and how each element of the privilege is met for that document.

Taber v. Ford Motor Co., No. 16-00162-CV-W-SWH, 2017 WL 4391779, at *4 (W.D. Mo. Sept. 29, 2017) (citing Highmark, Inc. v. Northwest Pipe Co., No. CIV 10-5089-JLV, 2012 WL 997007, at *5 (D. S.D. Mar. 23, 2012)).

Defendant has not provided in its privilege log or otherwise the factual information Plaintiff needs to assess Defendant's claim that the work product doctrine protects the withheld material. Defendant's privilege log is conclusory and lacks any detail regarding the withheld material. Defendant's argument that it cannot provide more detailed information in its privilege log without revealing its "opinion work product, defense strategy, attorney/client

communications, etc." is untenable in light of the requirements of Rule 26(b)(5)(A)(ii) and related authority. The Court need not ascertain at this time, however, what specifically Defendant must include in a privilege log, because (1) the parties did not address the specific content or requirements of a privilege log in their briefs or argument, other than to cite to Rule 26(b)(5), and (2) it is not clear that Plaintiff seeks material prepared by Defendant after Defendant hired outside counsel, the date the Court concludes is the start of work product protection in this case.

Despite the conclusory nature of its privilege log, Defendant offered to submit a more detailed privilege log, as well as the withheld material, for in camera review by the Court. At the time Defendant made this offer, Defendant had: (1) withheld documents based on both the work product doctrine and attorney/client privilege, and the latter privilege is no longer before the Court; (2) not provided a privilege log with sufficient information to allow Plaintiff to assess Defendant's work product doctrine claim with respect to each withheld document, as required by Rule 26(b)(5)(A)(ii) and related authority; (3) withheld documents for discovery requests that are no longer in dispute; and (4) asserted a start date for the work product doctrine's protection that is earlier than the start date the Court finds applicable. Under the circumstances, the Court need not at this time conduct an in camera review of documents withheld by Defendant.

To the extent Defendant subsequently claims work product protection for any material responsive to Plaintiff's disputed discovery requests, Defendant is required to prepare a privilege log setting forth both the relevant discovery request to which each withheld item responds and detailed information, without revealing information that is itself privileged or protected, supporting the work product doctrine claim with respect to each withheld item. Defendant shall provide Plaintiff with a copy of its privilege log and confer with Plaintiff to see which, if any, of

the withheld materials remain in dispute.  If the parties are unable to resolve their disputes regarding material withheld by Defendant as work product, Plaintiff may file a motion to compel seeking disclosure of the disputed material.

C. <u>Disclosure of work product material due to Plaintiff's substantial need and inability to obtain the material otherwise</u>

Plaintiff argues that the Court should require disclosure of the material Defendant withheld as work product based on her substantial need for the material in light of her claim for vexatious refusal and her inability to obtain the substantial equivalent of the withheld material by other means.  Defendant contends Plaintiff may not have access to the withheld material because it is opinion work product, rather than ordinary work product.  More specifically, Defendant states the withheld material "reflect[s] Defendant's opinions, mental impressions and conclusions with regard to Plaintiff's claim."

When an insured seeks relief for its insurer's vexatious refusal to pay under an insurance policy, "[t]here often is a substantial need [by the insured] for discovery of information in [the insurer's] claims file."  <u>Elec. Power Sys.</u>, 2016 WL 3997069, at *4 (citing <u>Lloyd's Acceptance Corp.</u>, 2012 WL 1389708, at *6).  However, an insured's "mere pleading of vexatious refusal to pay . . . does not itself create a substantial need for an insurer's internal documents."  <u>Id.</u>  While the showing required for an insured to demonstrate a substantial need for ordinary work product material is "not a high hurdle," an insured claiming vexatious refusal "must demonstrate some likelihood or probability that the documents sought may contain evidence of bad faith."  <u>Id.</u> (quoting <u>Lloyd's Acceptance Corp.</u>, 2012 WL 1389708, at *6).  This showing for ordinary work product is not enough to establish a litigant's access to opinion work product.  <u>See, e.g.</u>, <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 401 (1981).

At this point, the record does not demonstrate the extent to which any withheld material

responsive to Plaintiff's challenged discovery requests constitutes ordinary work product, as opposed to opinion work product, especially in light of the Court's conclusion no work product protection applies until October 11, 2017, when Defendant hired outside counsel. Therefore, the Court denies at this time Plaintiff's motion to compel to the extent it seeks to obtain Plaintiff's access to ordinary work product material withheld by Defendant.

After careful consideration,

**IT IS HEREBY ORDERED** that Plaintiff's motion to compel [ECF No. 23] is **DENIED** without prejudice as moot to the extent it focuses on Defendant's responses to Plaintiff's interrogatory 12 in Plaintiff's first set of interrogatories and requests for production 12, 16, and 17 in Plaintiff's first request for production, as well as Defendant's assertion of the attorney/client privilege in response to any of Plaintiff's discovery requests that are the subject of Plaintiff's motion to compel.

**IT IS FURTHER ORDERED** that Plaintiff's motion to compel [ECF No. 23] is otherwise **GRANTED** in part and **DENIED** in part.

**IT IS FURTHER ORDERED** that Plaintiff's motion to compel ECF No. 23] is **GRANTED** so that Defendant must disclose to Plaintiff with respect to material withheld by Defendant that: (1) is not protected by the attorney/client privilege and, until October 11, 2017, (2) was prepared or obtained by Defendant in response to Plaintiff's UIM claim.

 **IT IS FINALLY ORDERED** that, no later than May 28, 2019, Defendant shall answer Plaintiff's interrogatories 8 and 13 and produce material responsive to Plaintiff's requests for

production 2, 9, 10, 11 and 13 in accordance with this Order.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this <u>7</u><sup>th</sup> day of May, 2019