UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| MICHELLE L. NUNNALLY, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case no. 4:18cv00680 PLC |
| | ) | |
| STILLWATER INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court[1] on Defendant Stillwater Insurance Company's motion for summary judgment [ECF No. 19] and Plaintiff Michelle L. Nunnally's motion for summary judgment [ECF No. 25]. The parties filed a joint statement of stipulated facts for summary judgment [ECF No. 21].

**I.  Background**

Plaintiff alleges that on October 5, 2012, a vehicle she drove was struck by another vehicle, resulting in bodily injury to Plaintiff. The liability insurer for the driver of the other vehicle paid Plaintiff $25,000.00. Plaintiff then sought payment from Defendant under the underinsured motorists ("UIM") coverage of an insurance policy Defendant issued to Plaintiff ("the Policy"), which insures three vehicles. The Policy's UIM coverage has limits of $100,000 per person and $300,000 per accident. Plaintiff claims that Defendant's failure to pay her $300,000 in UIM coverage under the Policy constitutes a breach of contract (Count I) and vexatious refusal to pay (Count II). Defendant denies liability and asserts several affirmative defenses, including that: (1) Defendant is entitled to a set-off or deduction for any amount previously paid to Plaintiff by anyone

---

[1] The parties consented to the jurisdiction of the undersigned pursuant to 28 U.S.C. § 636(c) [ECF No. 11].

legally responsible to Plaintiff; and (2) the policy Defendant issued to Plaintiff does not permit "stacking" of UIM coverage.

In her summary judgment motion, Plaintiff argues that: (1) due to the terms of the Policy's UIM coverage, the Policy's $100,000.00 per person UIM coverage limit may be stacked three times because three vehicles are insured by the Policy, entitling her to a $300,000.00 UIM coverage limit; and (2) the Policy's UIM coverage endorsement "includes no language allowing a set-off of the $25,000.00 collected from the other driver's insurer." In its summary judgment motion, Defendant contends that: (1) the language of the Policy does not permit stacking of the UIM coverage limit, so Defendant is liable only for a maximum of $100,000.00 in UIM coverage, and (2) Defendant is entitled to a set-off or deduction, from any amount "Plaintiff may be entitled to at trial," equal to the amount paid by other responsible parties, including a deduction of the $25,000.00 paid by the driver whose vehicle allegedly rear-ended Plaintiff's vehicle.

A. Undisputed facts

The parties' joint stipulation states the following:[2] Plaintiff alleges that on October 5, 2012, she was rear-ended by Christina Allen and damaged by Ms. Allen's negligence. Parties' stip. ¶¶ 4-5 [ECF No. 21]. Progressive Insurance Company issued an automobile insurance policy to Ms. Allen, with a per person limit of $25,000. Id. ¶ 8. Progressive paid Plaintiff $25,000 by or on behalf of Ms. Allen for Ms. Allen's alleged liability for Plaintiff's alleged damages. Id. ¶ 9.

Defendant issued an automobile insurance policy (No. NV1000610), the Policy, to Plaintiff, which was in effect for the period from May 6, 2012 to November 6, 2012. Id. ¶ 1; Policy, Ex. 1 attached to parties' stip. [ECF No. 21-1]. The Policy insures three vehicles. Parties'

---

[2] The parties also attached to their stipulation a complete copy of the Policy. See Ex 1, attached to the parties' joint statem. stipulated facts [ECF No. 21-1].

2

stip. ¶ 3; Ins. Policy, Ex. 1 attached to parties' stip. [Ex. 21-1]; the Policy's declaration page listing three vehicles [ECF No. 21-1]. At the time of the accident, Plaintiff drove a vehicle that she owned and was insured under the Policy. Parties' stip. ¶¶ 6 and 14 [ECF No. 21]. The other two vehicles insured through the Policy were not involved in the accident. Id. ¶ 7.

The Policy's per person UIM limit of liability is $100,000.[3] Id. ¶ 1. Plaintiff claims that she is entitled to stack the Policy's UIM coverage based on the number of vehicles insured by the Policy. Id. ¶ 11.

The Policy contains, in part, the following language:

**Limit Of Liability**

A. The Limit Of Liability shown in the Schedule or in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the Limit Of Liability shown in the Schedule or in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.

This is the most we will pay regardless of the number of:

1. "Insureds";

2. Claims made;

3. Vehicles or premiums shown in the Schedule or in the Declarations; or

4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part A, Part B or Part C of this policy.

---

[3] The Policy's UIM coverage endorsement provides as part of the "Insuring Agreement" that Defendant "will pay compensatory damage which an 'insured' is legally entitled to recover from the owner or operator of an 'underinsured motor vehicle' because of 'bodily injury.'" Policy, UIM coverage endorsement, at 1 [ECF No. 21-1 at 40]. The parties do not challenge the status of the other driver's vehicle as "underinsured," Plaintiff's status as an "insured," or the fact that, as a result of the accident, Plaintiff suffered "bodily injury" under the Policy's terms.

C. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

D. [Omitted]

Parties' stip. ¶ 12 [ECF No. 21]; the Policy, Ex. 1, UIM Endorsement page 2 of 3 [ECF No. 21-1].

The Policy also contains, in part, the following language:

**Other Insurance**

If there is other applicable insurance available under one or more policies or provisions of coverage that is similar to the insurance provided by this endorsement:

1. Any recovery for damages under all such policies or provisions of coverage may equal but not exceed the highest applicable limit for any one vehicle under any insurance providing coverage on either a primary or excess basis.

2. Subject to all other provisions of this policy, including but not limited to:

   a. Exclusion A. of this endorsement;

   b. Paragraph A. of the Limit of Liability provision of this endorsement;

   c. Paragraph 1. of the Other Insurance provision of this endorsement; and

   d. The Two Or More Auto Policies provision of this policy;

   any insurance we provide with respect to a vehicle you do not own, including any vehicle while used as a temporary substitute for "your covered auto," shall be excess over any collectible insurance providing such coverage on a primary basis.

3. If the coverage under this policy is provided:

   a. On a primary basis, we will pay only our share of the loss that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on a primary basis.

4

b. On an excess basis, we will pay only our share of the loss that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of liability bears to the total of all applicable limits of liability for coverage provided on an excess basis.

Parties' stip. ¶ 13 [ECF No. 21]; the Policy, Ex. 1, UIM Endorsement page 2 of 3 [ECF No. 21-1].

**II.    Legal standard**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When parties file cross-motions for summary judgment, each summary judgment motion must be evaluated independently to determine whether a genuine dispute of material fact exists and whether the movant is entitled to judgment as a matter of law." Wermager v. Cormorant Twp. Bd., 716 F.2d 1211, 1214 (8th Cir. 1983). Here, the parties stipulated to the material facts, including the relevant provisions of the Policy. Where a case is "presented to the district court on cross-motions for summary judgment, filed under stipulated facts, . . . one of the moving parties [is] entitled to judgment as a matter of law." Master Insulators of St. Louis v. International Ass'n of Heat and Frost Insulators and Asbestos Workers, Local No. 1, 925 F.2d 1118, 1120 (8th Cir. 1991).

"It is well settled that the interpretation of an insurance policy is a question of law." Council Tower Ass'n v. Axis Specialty Ins. Co., 630 F.3d 725, 728 (8th Cir. 2011) (applying Missouri law) (citing Seeck v. Geico Gen. Ins. Co.. 212 S.W.3d 129, 132 (Mo. 2007) (en banc)). "When, as here, [a] federal [court's] jurisdiction is based on diversity of citizenship, '[s]tate law governs the interpretation of insurance policies.'" Olga Despotis Trust v. Cincinnati Ins. Co., 867 F.3d 1054, 1059 (8th Cir. 2017) (third alteration in original) (quoting Burger v. Allied Prop. & Cas. Ins. Co., 822 F.3d 445, 447 (8th Cir. 2016)). More specifically, Missouri law governs the

interpretation of the Policy because this Court sits in Missouri and has diversity jurisdiction over this lawsuit. See Vandewarker v. Continental Resources, Inc., 917 F.3d 626, 629 (8th Cir. 2019) (quoting Northern Oil & Gas Inc. v. Moen, 808 F.3d 373, 376 (8th Cir. 2015) for the principle that a federal district court sitting in diversity applies "the substantive law of the forum state"). This Court applies "Missouri law as declared by . . . the Supreme Court of Missouri." Council Tower Ass'n, 630 F.3d at 728. "Where no Missouri Supreme Court precedent exists, on an issue, [a federal court] predict[s] what the [Missouri Supreme] court would decide' and consider[s] intermediate appellate court decisions in that process." Secura Ins. v. Horizon Plumbing, Inc., 670 F.3d 857, 861 (8th Cir. 2012) (quoting Raines v. Safeco Ins. Co. of Am, 637 F.3d 872, 875 (8th Cir. 2011)).

The Missouri Supreme Court requires a court to give language used in an insurance policy its plain meaning. Robin v. Blue Cross Hosp. Serv., Inc., 637 S.W.2d 695, 698 (Mo. 1982) (en banc). "In construing the terms of an insurance policy, [a court] applies the meaning that would be attached by an ordinary person of average understanding if purchasing insurance . . . ." Rice v. Shelter Mut. Ins. Co., 301 S.W.3d 43, 46 (Mo. 2009) (en banc).

"Absent an ambiguity, an insurance policy must be enforced according to its terms. If, however, policy language is ambiguous, it must be construed against the insurer." Jones v. Mid-Century Ins. Co., 287 S.W.3d 687, 690 (Mo. 2009) (en banc). "An ambiguity exists when there is duplicity, indistinctness, or uncertainty in the meaning of the language in the policy. Language is ambiguous if it is reasonably open to different constructions." Id. at 690 (internal quotation marks omitted) (quoting Seeck, 212 S.W.3d at 132). Additionally, "Missouri law is well-settled that where one provision of a policy appears to grant coverage and another to take it away, an ambiguity exists." Rice, 301 S.W.3d at 48. A contract is not ambiguous, however, simply because the

parties disagree over construction of its terms. Ethridge v. Tierone Bank, 226 S.W.3d 127, 131 (Mo. 2007) (en banc).

### III. Discussion

Plaintiff argues she is entitled to summary judgment as a matter of law because the Policy contains "inconsistent provisions" regarding UIM coverage, specifically certain clauses in the Limit of Liability and Other Insurance provisions, and the ambiguity created by those clauses requires stacking of the UIM coverage. Due to that ambiguity, Plaintiff asks the Court to conclude she may recover up to $300,000 in UIM coverage, the sum resulting from the stacking three times of the $100,000 per person limit of the Policy's UIM coverage for the three vehicles insured by the Policy.

Defendant contends it is entitled to summary judgment as a matter of law on the issue of stacking because the Policy contains clear and unambiguous language precluding stacking. Therefore, Defendant asks the Court to conclude "Plaintiff's [UIM] limit of liability is $100,000 and [Plaintiff] cannot stack her UIM limits." Defendant also asserts that, as a matter of law, the Limit of Liability provision in the Policy's UIM coverage includes language entitling Defendant to a deduction, from any recovery Plaintiff receives in resolution of this lawsuit, of the $25,000 the other driver's insurer paid to Plaintiff.

Under the circumstances, the issues before the Court are whether the language of the Policy allows: (1) stacking of the $100,000 per person limits in the UIM coverage and (2) a deduction from the amount of damages awarded Plaintiff of any payment made to Plaintiff by other responsible parties, including the $25,000 Plaintiff received from Progressive, before Defendant pays Plaintiff under the UIM coverage.

1. Stacking

The Missouri Supreme Court defines stacking as:

<u>an insured's ability to obtain multiple insurance coverage benefits for an injury</u> either from more than one policy, as where the insured has two or more separate vehicles under separate policies, or <u>from multiple coverages provided for within a single policy</u>, as when an insured has one policy which covers more than one vehicle.

Ritchie v. Allied Prop. & Cas. Ins. Co., 307 S.W.3d 132, 135 (Mo. 2009) (en banc) (emphasis added) (internal quotation marks omitted) (quoting Niswonger v. Farm Bureau Town & Country Ins. Co., 992 S.W.2d 308, 313 (Mo. Ct. App. 1999)). As the Missouri Court of Appeals has expressly recognized, insurance policy language proscribing stacking "prohibits the insured from collecting on multiple coverage items or policies from the same insurer for a single accident." Hall v. Allstate Ins. Co., 407 S.W.3d 603, 608 (Mo. Ct. App. 2012).

Under Missouri law, a court determines the ability to stack UIM coverage by considering the terms of "the contract entered [into] between the insured and the insurer." Id. (quoting Rodriguez v. General Accident Ins. Co. of Am., 808 S.W.2d 379, 383 (Mo. 1991) (en banc)). Therefore, a court ascertains whether the policy language unambiguously disallows stacking. Id. If so, the anti-stacking provision(s) are enforced. Id. "If, however, policy language is ambiguous [as to stacking], it must be construed against the insurer" and stacking is allowed. Id.

At least one clause in the Limit of Liability provision of the Policy's UIM coverage proscribes stacking of UIM coverage. Specifically, paragraph A of the Limit of Liability provision states that the per person limit for bodily injury "is [the insurer's] maximum limit of liability for all damages . . . [and] the most [the insurer] will pay regardless of the number of . . . Vehicles . . . shown . . . in the Declarations." Courts have found this language unambiguously prohibits stacking of underinsured motorist coverage. Midwestern Indem. Co. v. Brooks, 779 F.3d 540, 545 (8th Cir. 2015) (applying Missouri law to a policy insuring five vehicles) (finding with respect to an

8

identical provision that "[i]n plain terms, the provision prohibits any attempt to stack the [per person UIM coverage] limits 'regardless of the number of . . . Vehicles . . . in the Declarations'"); accord Danner v. Safeco Ins. Co. of Ill., No. 4:18 CV 1149 RWS, 2019 WL 2247691, at *4 (E.D. Mo. May 24, 2019) (applying Missouri law) (finding a virtually identical provision was one of "three unambiguous anti-stacking provisions" in a policy insuring two vehicles); Staufenbiel v. Amica Mut. Ins. Co., No. 13-CV-2571-JAR, 2015 WL 1456987, at *4 (E.D. Mo. Mar. 30, 2015) (applying Missouri law) (finding an identical provision in a policy insuring four vehicles "unambiguously prohibits stacking of underinsured benefits").

Plaintiff acknowledges the Policy's UIM endorsement "includes Limit of Liability language containing 'no-stacking' of UIM coverage[] clauses." Plaintiff contends, however, that an ambiguity exists due to the presence of the "excess" language in paragraph 2 of the UIM coverage's "Other Insurance" provision. Specifically, Plaintiff points to the language at the end of paragraph 2 of the "Other Insurance" provision stating that "any insurance we provide with respect to a vehicle you do not own . . . shall be excess over any collectible insurance providing such coverage on a primary basis." Plaintiff characterizes that language as "unequivocally" providing excess coverage creating an ambiguity that allows stacking.[4] To support her position that the "excess" clause of the Other Insurance provision creates ambiguity, Plaintiff relies on Jordan v. Safeco Ins. Co. of Ill., 741 F.3d 882 (8th Cir. 2014) (applying Missouri law).

In Jordan, the Eighth Circuit considered the stacking of UIM coverage for a pedestrian struck by a car. Id. The plaintiff and her husband had three insurance policies providing $100,000 per person UIM coverage that the defendant issued to insure the couple's five vehicles. Id. at 883.

---

[4] Plaintiff also asks the Court to reject "any argument by [Defendant] that the [Policy's] excess clause did not apply to [Plaintiff] because she was not occupying a non-owned vehicle at the time she was injured." Pl.'s mem. supp. summ. j at 7 [ECF No. 26]. Defendant does not pursue such an argument.

The policies included, in addition to provisions prohibiting stacking of underinsured motorist coverage, an "Other Insurance" clause stating: "2. Any underinsured motorist insurance [the insurer] provide[s] with respect to a vehicle [the insured] do[es] not own shall be excess over any collectible underinsured motorist insurance." Id. at 884, 886. The plaintiff sought the defendant's payment of $500,000 in underinsured coverage ($100,000.00 for each of the five insured vehicles). Id. at 884. The defendant paid the plaintiff $100,000 in UIM coverage but refused to pay more, asserting "the policies contained language that prohibited the 'stacking,' or combining, of the policies' UIM coverage." Id. at 883. The district court entered summary judgment in favor of the defendant, finding that the Missouri Supreme Court's decision in Ritchie, supra, which permitted stacking of UIM coverage for a passenger who was injured while riding in a "non-owned" vehicle, "was limited to the special situation where the insured is occupying a vehicle the insured does not own." Id. The Eighth Circuit disagreed with the district court's interpretation of the Ritchie decision, and reversed and remanded for entry of partial summary judgment in favor of the plaintiff and further proceedings. Id.; id. at 888.

In reaching its decision to reverse and remand in Jordan, the Eighth Circuit found that an ambiguity existed because the policies "contained clauses that claim[ed] to prohibit 'stacking' and also contain[ed] clauses that appear to authorize 'stacking.'" Id. at 885. The Eighth Circuit noted the Ritchie decision allowed stacking due to the ambiguity created by an "Other Insurance" clause that was "essentially identical" to the "Other Insurance" clause in the policies at issue in Jordan,[5]

---

[5] The "Other Insurance" clause in Ritchie stated, "Any coverage we provide with respect to a vehicle you do not own shall be excess over any other collectible underinsured motorist coverage." Jordan v. Safeco Ins. Co. of Illinois, 741 F.3d 882, 886 (8th Cir. 2014) (internal quotation marks omitted) (quoting Ritchie v. Allied Prop. & Cas.Ins. Co., 307 S.W.3d 132, 137 (Mo. 2009) (en banc)).

10

and rejected the insurer's argument that the Ritchie decision was limited to situations in which the insured had occupied a non-owned vehicle. Id. The Eighth Circuit specifically found:

> nothing in the plain language of the [Other Insurance] clause [in the policies] mandates the occupancy of a non-owned vehicle. The clause, as written, is silent as to occupancy. This silence speaks volumes [because] the policies specifically define[d] "occupying" but then exclude[d] this defined term from the Other Insurance clause.

Id. at 886. The Eighth Circuit further concluded:

> the occupancy question was not at issue in Ritchie. Accordingly, whether the policy in Ritchie required occupancy of a non-owned vehicle was not specifically decided by the Missouri Supreme Court. . . . Thus, it would not be appropriate to read into the Ritchie holding a judicially-created occupancy requirement.

Id. (citation omitted) (footnote added).[6]

Defendant argues that Jordan is distinguishable, and the Eighth Circuit's post-Jordan decision in Brooks, 779 F.3d at 546, finding no ambiguity created by an "other insurance" clause that is virtually identical to the one in the Policy, controls in this case. Therefore, Defendant urges, the Policy's provisions do not create an ambiguity and the Policy clearly prohibits stacking of the UIM coverage.

With respect to the Jordan decision, Defendant points out that the "other insurance" clause at issue in that case was not "subject to" other policy limitations. In this Policy, however, paragraph 2 of the Policy's "Other Insurance" provision begins with the phrase: "Subject to all other provisions of this policy, including but not limited to: . . . b. Paragraph A. of the Limit of Liability provision of this endorsement . . . ." Based on this "subject to" language in the Policy, which is absent from the "other insurance" language in Jordan, the "excess" clause that concludes

---

[6] The Eighth Circuit in Jordan also pointed out that the defendant insurer did "not dispute that it provided [$100,000 of] UIM coverage to" the plaintiff. Jordan, 741 F.3d at 886. Defendant in this case disputes the amount of UIM coverage to which Plaintiff is entitled and has not paid Plaintiff any amount under the Policy's UIM coverage.

11

paragraph 2 of the Policy's "Other Insurance" provision is "subject to" the unambiguous anti-stacking clause in paragraph A of the Limit of Liability provision. Therefore, Defendant asserts, stacking is prohibited under the Policy despite the similarity between the "excess" clause of the "Other Insurance" provisions in this Policy and the policies at issue in Jordan. The Court agrees with Defendant that Jordan is distinguishable on this basis.

Additionally, the "other insurance" clause at issue in the Missouri Supreme Court's decision in Ritchie was not expressly "subject to" any anti-stacking clause in the policy. See Ritchie, 307 S.W.3d at 137. Therefore, the Ritchie decision is not persuasive authority here.

The Court also agrees with Defendant that the discussion of the "other insurance" provision in Brooks, supra, is controlling here. In Brooks, the Eighth Circuit considered the stacking of UIM coverage for a bicyclist injured when a vehicle hit her. Brooks, 779 F.3d at 542. The bicyclist and her husband had an insurance policy insuring five vehicles. Id. at 543. The policy's UIM coverage provided limits of $100,000 per person and $300,000 per accident. Id. The district court decided that the policy "quite clear[ly]" prohibited "intra-policy stacking." Id. In affirming, the Eighth Circuit agreed that the Limit of Liability language "[i]n plain terms . . . prohibit[ed] any attempt to stack these limits 'regardless of the number of . . . Vehicles . . . shown . . . in the Declarations.'" Id. at 544. The Eighth Circuit also rejected the plaintiffs' argument that statements on the declarations page rendered the policy ambiguous so as to allow stacking.[7] Id. at 545.

More importantly for this case, the Eighth Circuit also rejected the argument of the plaintiff in Brooks that the excess clause in the "other insurance" provision and facts in the Brooks case

---

[7] In her reply, Plaintiff contends Defendant's position that Plaintiff is asserting "the exact same argument" as the plaintiff in Brooks is incorrect to the extent the plaintiff in Brooks argued statements on the declarations page created ambiguity. The Court agrees with Plaintiff's contention but understands Defendant urges Plaintiff's argument regarding the "excess" clause in the Policy's "Other Insurance" provision is the same as an argument the plaintiff in Brooks pursued.

12

were comparable to those in the Jordan case requiring a determination that the policy in Brooks permitted stacking. Brooks, 779 F.3d at 546 n.5. The Eighth Circuit in Brooks concluded the two cases (Jordan and Brooks) had "factual similarities" but "the legal issues and material facts [between the two cases were] distinct" and did not "imply the same conclusion." Id. In particular, the Eighth Circuit stated:

> In Jordan, the parties agreed the policy's Other Insurance clause would make the policy ambiguous as to stacking and disagreed only as to whether the policy required the insured to occupy her vehicle – a question not in dispute here. See Jordan, 741 F.3d at 885. To the extent the Brookses contend the Other Insurance clause creates an ambiguity as to stacking, as in Ritchie, 307 S.W.3d at 138, the clause in the present case is readily distinguishable. Unlike Ritchie, see id. at 137, the Other Insurance clause here is expressly "[s]ubject to all other provisions of this policy, including" specifically "the Limit of Liability provision" prohibiting stacking. With this express limitation, the Other Insurance clause cannot reasonably be read to authorize stacking.

Id.[8] (alteration in original).

As Defendant points out, this case is similarly distinguishable from Jordan, supra. Here, the parties do not agree that the Policy's Other Insurance clause creates an ambiguity as to stacking. To the contrary, Defendant strongly disputes Plaintiff's contention that the Policy is ambiguous. Furthermore, this case does not present an issue regarding the occupancy of a vehicle. Moreover, as noted earlier, the Other Insurance "excess" clause on which Plaintiff relies to establish both the ambiguity of the Policy and the controlling authority of Jordan, is "subject to" the unambiguous anti-stacking clause in the Policy's Limit of Liability provision, unlike the similar "excess" provisions in Jordan and Ritchie. As the Eighth Circuit concluded in Brooks,

---

[8] The "other insurance" provision in Brooks was not set forth in the decision. Therefore, the Court is unable to discern how comparable its terms, beyond the "subject to" language, are to the terms of the relevant language in the Policy.

with respect to the "subject to" language, "the [Policy's] Other Insurance clause cannot reasonably be read to authorize stacking." See Brooks, 779 F.3d at 546 n.5.

Finding the discussion of the similar "other insurance" excess clause in Brooks controlling, the Court concludes the Policy is not ambiguous due to the excess clause in the Other Insurance provision of the UIM coverage. Therefore, the Policy's UIM coverage may not be stacked. See Gillispie v. Twin City Fire Ins. Co., 112 F. Supp. 3d 900, 904-05 (E.D. Mo. 2015) (applying Missouri law) (following Brooks to find an "other insurance" clause regarding excess insurance that "specifically state[d] that it [was] subject to" the limit of liability provision "capped" the UIM coverage in a policy insuring four vehicles and did not allow stacking of that coverage); Mork v. Trumbull Ins. Co., No. 4:12-CV-2217 NAB, 2014 WL 12805665, at *5 (E.D. Mo. Apr. 4, 2014) (applying Missouri law) (finding a policy insuring three vehicles and having an excess clause virtually identical to the excess clause at issue in this case, "makes clear [through the "subject to" language] that the anti-sta[c]king language limits the excess coverage language that follows it [and t]herefore, the contract is unambiguous in asserting that stacking [of UIM coverage] is not allowed"). Therefore, with respect to stacking of the Policy's UIM coverage, the Court grants Defendant's motion for summary judgment and denies Plaintiff's summary judgment.

B. Set-off or deduction

Defendant argues it is entitled to a deduction or set-off, from the amount Plaintiff is entitled to recover as damages, of the $25,000 Progressive paid Plaintiff on behalf of the other driver. Plaintiff counters that a set-off provision "typically states the amount of [UIM] coverage will be reduced or set off by all sums previously paid to the insured." Pl.'s reply Pl's mot. summ. j. at 2-3 [ECF 33] (emphasis added). Defendant reiterates in its sur-reply to Plaintiff's summary judgment motion that it is seeking "and is entitled to a set-off from *damages*, not [the UIM

14

coverage limit]." Def's sur-reply at 2 [ECF No. 36].[9]  Under the circumstances, the Court views Defendant as seeking a deduction from the total amount of damages Plaintiff is entitled to as found by the trier of fact, and not from the UIM coverage limit in the Policy.

In support of its position, Defendant relies on the language of paragraph C of the UIM's Limit of Liability provision in the Policy. That paragraph states: "We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible." Defendant asserts an identical provision has been "held unambiguous and enforceable," citing Staufenbiel, supra, 2015 WL 1456987, at *5.

In Staufenbiel, the Eastern District considered this same language "in the context of the entire Limit of Liability Provision" of a policy's UIM coverage, and characterized this language as having a "clear" "plain meaning." Id. The court concluded that the provision, along with the grant of insurance, "'simply means that in determining the total damages to which the [UIM] coverage will be applied, the amount of money already received from the tortfeas[o]r must be deducted. In this way it avoids double recovery.'" Id. (quoting Ritchie, 307 SW.3d at 141). Plaintiff has not challenged or distinguished the application of Staufenbiel under the circumstances here.

Finding Staufenbiel persuasive, Plaintiff may recover under the Policy's UIM coverage if the trier of fact finds Plaintiff's damages exceed $25,000, the amount the other driver's insurer paid Plaintiff. To ascertain how much Defendant must pay under the Policy's UIM coverage, the amount the other driver's insurer paid Plaintiff will be deducted from the total damages awarded

---

[9] In other words, Defendant explained: "Defendant is entitled to a set-off for the amount paid by the tortfeasor from whatever amount of damages Plaintiff is entitled to as found by the trier of fact." Def.'s sur-reply to Pl.'s mot. summ. j. at 3 [ECF No. 36].

to Plaintiff. For instance, if Plaintiff obtains an award of $125,000 or more in damages, then the $25,000 Plaintiff received from the other driver's insurer is deducted from the award, and Defendant must pay Plaintiff $100,000, the maximum amount of the Policy's UIM coverage. Alternatively, if Plaintiff obtains a damage award of less than $125,000, the $25,000 Plaintiff received from the other driver's insurer is deducted from the awarded amount and Defendant must pay Plaintiff the difference under the Policy's UIM coverage.

In urging the Court to reject Defendant's argument, Plaintiff relies on the Missouri Supreme Court's decision in Jones, supra. In Jones, the Missouri Supreme Court addressed a Limit of Liability provision that stated: "The amount of [UIM] Coverage we will pay shall be reduced by any amount paid or payable to or for an insured person . . . by or for any person or organization who is or may [be] held legally liable for the bodily injury to the insured person." Jones, 287 S.W.3d at 690. The Missouri Supreme Court found this provision conflicted with other relevant provisions, but found an interpretation that gave "meaning to all" relevant provisions. Id. at 691-93. The Missouri Supreme Court interpreted the provision as follows:

> in determining the total damage to which the [UIM] coverage will be applied, the amount of money already received from the tortfeasor must be deducted. In this way, it avoids a double recovery. So, for instance, if the plaintiffs here had suffered only $125,000 in damages, and had received $50,000 from the tortfeasor, then the $50,000 received would be deducted from the total of $125,000 in damages and the [UIM] coverage would supply the remaining $75,000.

Id. at 693.

Because the duplicate payment language at issue in this case is not similar to the coverage reduction provision at issue in the Jones case, the discussion in Jones of conflicts between the coverage reduction provision and others within the UIM coverage is inapplicable here. The Missouri Supreme Court's interpretation of the challenged provision in Jones, however, clearly supports the Court's analysis of the duplicate payment provision at issue here. Under the

16

circumstances, the Court grants Defendant's motion for summary judgment and denies Plaintiff's motion for summary judgment on the set-off or deduction issue.

Accordingly, after careful consideration,

**IT IS HEREBY ORDERED** that Defendant's motion for summary judgment [ECF No. 19] is **GRANTED.**

**IT IS FURTHER ORDERED** that Plaintiff's motion for summary judgment [ECF No. 25] is **DENIED**.

**IT IS HEREBY ORDERED** that Plaintiff is not entitled to stack the Policy's UIM coverage to obtain a payment of more than $100,000 from Defendant.

**IT IS FURTHER ORDERED** that Defendant is liable to pay Plaintiff up to $100,000 in UIM coverage, with the actual amount due from Defendant calculated by deducting the $25,000 the other driver's insurer paid Plaintiff from the total damages awarded to Plaintiff. If the difference is $100,000 or more, Defendant must pay Plaintiff $100,000 under the Policy's UIM coverage. Otherwise, Defendant must pay Plaintiff the actual difference.

**IT IS FINALLY ORDERED** that Plaintiff's request for oral argument on the motions for summary judgment [ECF No. 41] is **DENIED**.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 24th day of July, 2019